[Cite as *State v. Williams*, 2017-Ohio-1096.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# MERCER COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**　　　　　　　**CASE NO. 10-16-06**

    **v.**

**DANNY L. WILLIAMS,**　　　　　　　　**O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Mercer County Common Pleas Court**
**Trial Court No. 14-CRM-151**

**Judgment Affirmed**

**Date of Decision: March 27, 2017**

**APPEARANCES:**

    *Eric J. Allen* **for Appellant**

    *Matthew K. Fox and Joshua A. Muhlenkamp* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Danny L. Williams ("Williams"), brings this appeal from the May 2, 2016 judgment of the Mercer County Common Pleas Court upon his conviction of two counts of Felonious Assault, both in violation of R.C. 2903.11(A)(2), 2903.11(D)(1)(a), both felonies of the second degree (Count One and Two); Improperly Discharging a Firearm At or Into a Habitation or in a School Safety Zone, in violation of R.C. 2923.161(A)(1), 2923.161(C), a felony of the second degree (Count Three); Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree (Count Four); and Obstructing Official Business, in violation of R.C. 2921.31(A), 2921.31(B), a felony of the fifth degree (Count Five). Firearm Specifications, in violation of R.C. 2941.154(A), were contained in both Felonious Assault counts and the count of Discharging a Firearm At or Into a Habitation. On appeal, Williams argues that the trial court violated his right to due process when it denied his request for a continuance at the close of the State's case in chief and because the State failed to provide sufficient evidence of the requisite mental state of knowingly in the felonious assault counts.

*Facts and Procedural History*

{¶2} In the early morning hours of October 26, 2014, Williams walked past the residence of Robert Kennedy ("Kennedy") and Heather Dorsten ("Dorsten") at

417 N. Branson Street, Celina, Mercer County, Ohio and fired a number of shots into the master bedroom window of the residence. Williams was upset over a $20.00 debt owed him by Kennedy.

{¶3} Officers responded to a 9-1-1 call regarding the shooting and quickly identified Williams as a suspect. Kennedy recognized markings on the spent shells recovered by officers in the alley beside Kennedy's home as being consistent to bullets owned by Williams. (Trial Tr. at P. 224-225). Kennedy had also received a text message from Williams just prior to the shooting which stated "Tied of be Fuck oove by so call tends Wtf Ch it bitch" [sic] which he interpreted as a threat by Williams. (Trial Tr. at P. 235).

{¶4} Officers made contact with Williams at his residence. Williams refused to permit officers to search his residence, and also refused to allow them to swab his hands for gunshot residue ("GSR"). (Trial Tr. at P. 499-500). Due to his refusal, the officers obtained a search warrant resulting in the search of Williams' residence and the taking of a GSR (gunshot residue) swab of Williams' hands. (Trial Tr. at P. 501-502)

{¶5} The search of Williams' residence resulted in officers locating a handgun underneath a couch in Williams' trailer. (Trial Tr. at P. 503). The handgun contained ammunition identical to the spent ammunition found at the victims' home.

(Trial Tr. at P. 565-567). It was further determined that Williams had gunshot residue on his hand. (Trial Tr. at P. 523-527).

**{¶6}** On November 20, 2014, Williams was indicted on two counts of Felonious Assault (with gun specifications), one count of Improperly Discharging a Firearm At or Into a Habitation (with a gun specification), one count of Having a Weapon Under Disability and one count of Obstructing Official Business. Williams pled not guilty to all of the charges at his arraignment on November 24, 2014.

**{¶7}** On April 25-26, 2016, Williams' case proceeded to a jury trial. At the conclusion of the State's case, counsel for Williams requested a continuance in order to contact and interview a potential alibi witness. That witness was not previously identified on Williams' list of potential witnesses. (Doc. 316). The trial court denied the request and the case proceeded as scheduled. Ultimately, the jury found Williams guilty on all counts.

**{¶8}** Upon the verdict, the trial court proceeded to sentence Williams immediately. However, the trial court merged Counts One and Three, with the State electing to proceed on Count Three as its sentencing count. Williams was sentenced to a cumulative fifteen (15) years in prison.

**{¶9}** It is from this judgment that Williams appeals, asserting the following assignments of error for our review.

## ASSIGNMENT OF ERROR NUMBER I

**THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION WHEN IT DENIED A REQUEST FOR CONTINUANCE TO OBTAIN CRUCIAL WITNESSES**

{¶1} In his first assignment of error, Williams argues the trial court erred in denying his motion for a continuance. For the reasons that follow, we find Williams' first assignment of error is without merit.

{¶2} The decision to deny a continuance is within the broad discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Therefore, we will not reverse the trial court absent an abuse of discretion. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶3} When evaluating a motion for continuance, a trial court should consider the following: (1) the length of the delay requested; (2) whether other continuance have been granted; (3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances that give rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Unger*, 67 Ohio St.2d at 67-68.

{¶4} In the case sub judice, Williams contends the trial court should have granted his motion to provide him time to locate, interview and subpoena three crucial witnesses. His request for a continuance was twofold: to find two (2) potential witnesses to rebut the State's evidence as to how he obtained his firearm and to locate a witness to support his alibi defense. (Trial Tr. at 652-654).

{¶5} Upon inquiry, the trial court determined that how Williams received his weapon was not an issue raised by the State. Thus, the only valid reason raised by Williams is his argument relative to an alibi defense.

{¶6} Despite Williams' request, several factors weigh in favor of the trial court's decision to deny his motion. Williams raised his motion on the second day of a two-day jury trial after the State rested its case in chief. In his motion, Williams stated he was not aware of the whereabouts of his potential alibi witness. Our review of the record finds that Williams failed to file a notice of alibi prior to trial as required by Crim.R. 12.1. Crim.R. 12.1 provides as follows:

> **Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.**

Thus, we determine the continuance request of Williams to present a potential alibi defense is untimely. See generally, *State v. Elersic*, 11th Dist. Geauga, 2003-Ohio-7218.

{¶7} We find the motives of the continuance motion to be problematic and under the circumstances, a decision to grant the motion in the middle of a jury trial would have undoubtedly resulted in a substantial inconvenience to the trial court, the State and the jurors. We therefore conclude that the trial court did not abuse its discretion by denying Williams' motion for a continuance made at the close of the State's case.

{¶8} Accordingly, Williams' first assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER II

**APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION WHEN THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE OF THE ELEMENT OF KNOWINGLY**

{¶9} In his second assignment of error, Williams argues that the trial court erred by entering a verdict that was not supported by sufficient evidence. Specifically, Williams claims that the State failed to prove that he knowingly intended to cause, or attempt to cause, serious physical harm to both intended victims in the two counts of felonious assault. We disagree.

*Standard of Review*

{¶10} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence, that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins, syllabus*. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, *supra*.

*Knowingly*

{¶11} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "With regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that 'intent,

lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof.'" *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶41, quoting *State v. Garner*, 74 Ohio St.3d 49, 60 (1995). Thus, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. Hamilton) (2001).

{¶12} In our determination of the element of knowingly, we look to the totality of presented evidence starting with Williams' familiarity with the physical layout of the victims' home and the probability of which room they would be occupying when the shooting occurred. On direct examination of Kennedy, one of Williams intended victims, the following exchange occurred regarding Williams' knowledge of the layout of his home:

Q. (Prosecuting attorney) And had he been to your house before?

A. (Kennedy) Yes.

Q. On what occasions, if any?

A. Many occasions. * * *

Q. He'd been there frequently?

A. Yes.

Q. Had he been inside the house?

A. Yes.

Q.   Had he been in the living room?

A.   Yes.

Q.   Would he have been in the master bedroom, where - - seeing the location of the master bedroom - -

A.   Yes.

Q.   - - from the inside?

A.   Yes.

Q.   And is there a hallway that connects the bedrooms?

A.   Yes.

Q.   And is that bathroom you pointed out in Exhibit 8 the only bathroom in the house?

A.   Yes.

Q.   And would he have used that?

A.   Yes.

Q.   And your room?

A.   Yes.

(Trial Tr. at 205-206).

{¶13} This testimony details Williams' awareness of the physical layout of the victims' home, specifically the location of the master bedroom, the room upon which the victims most likely would be occupying at 2:25 a.m., the approximate time of the shooting.  Thus, Williams' intention to fire multiple shots only into this

bedroom and in the middle of the night is consistent with proof of Williams' mental state that he intended to cause serious physical harm to any person present in that room at that time. Both Dorsten and Kennedy were present in the bedroom when the shooting occurred. (Trial Tr. 213-215).

{¶14} Further, prosecution's witness Wendy Swain ("Swain") testified to exchanges of text messages which she and Williams had before and after the shooting, revealing the following:

* * *

Q.    (Prosecuting attorney)  The last one at 2:18 is what?

A.    (Witness Swain reading from Exhibit 44) Could find a - - fine wine woman Fuck up.

Q.    Now, there is a little break for about five minutes.  Then what do you receive?

A.    (Reading from Exhibit 44) U up.

Q.    And then there is a break for 31 minutes?

A.    Yeah.

Q.    And what time is the next one?

A.    2:54 a.m.

Q.    And what do you receive?

A.    (Reading from Exhibit 44)  If any one asks I was home sentt 11 ok. [sic]

Case No. 10-16-06

(Trial Tr. at 418-419). These texts present evidence of Williams' plan to establish his defense of alibi just minutes after he shot into the victims' bedroom. This evidence establishes Williams' scienter, or guilty knowledge of his criminal act, and his attempt to cover it up.

**{¶15}** Further, and as to motive, the State presented competent and credible evidence to prove why Williams shot into the victims' bedroom. The State presented evidence that Williams was upset with Kennedy over a $20 debt. Such was disclosed during the following exchange of testimony:

* * *

A. (Witness Kennedy reading from Exhibit 6, a text message received from Williams.) Now on the 25th at 2:20 - - 2:22 a.m., he puts, Tied of be Fuck oove, O-O-V-E, which I took as over, by so call tends, which I took as friends, and WTF, which I took as what the fuck, Ch it bitch, which I took as Chicken shit bitch.

Q. Now, I want to go back and talk about these. The evening of the 25th is Saturday, the morning of the 26th is Sunday?

A. Yes.

Q. So when - - this 2:22 would be on the Sunday?

A. No. I would say - -

Q. Sunday morning?

A. Yes. Yes.

Q. So that's the 26th?

A. Yes. Yes, you're right.

-12-

(Trial Tr. at 235-236).

{¶16} Such testimony supports the State's theory that Williams' anger toward Kennedy motivated him to shoot into the bedroom. Adding this evidence to Williams' knowledge of the physical layout of the victims' home, the probability that the intended victims would be in that room at 2:25 in the morning, the plan of Williams to manufacture a bogus alibi, the fact that the ammunition recovered at the scene matched the ammunition found in Williams' gun, and the fact that gun powder residue was discovered upon Williams' hand, we find, viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found that Williams knowingly attempted to cause serious physical harm to Kennedy and Dorsten, beyond a reasonable doubt.

{¶17} Accordingly, we overrule Williams' second assignment of error.

{¶18} Having found no error prejudicial to the appellant herein in the particular assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**